UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELAVAL, INC.,

       Plaintiff,

v.

SCOTT SCHMITT,

       Defendant.
_____/

File No. 1:13-CV-1238

HON. ROBERT HOLMES BELL

**O P I N I O N**

       This diversity action is before the Court on Plaintiff's motion for a preliminary injunction to prohibit a former employee from breaching a non-competition agreement. For the reasons that follow, the motion will granted in part and denied in part.

**I.**

       Plaintiff DeLaval, Inc., a Delaware Corporation based in Missouri, is "a full service supplier to dairy farms that develops, manufactures, services, and distributes equipment and complete systems for milk production and animal husbandry." (Russell Decl. ¶ 2.) DeLaval and its sister corporations operate in over 100 markets worldwide. (*Id.* at ¶ 3.) Defendant Scott Schmitt worked for DeLaval in Michigan for over ten years as a Service Technician, and most recently as Service Department Manager. (Schmitt Aff. ¶¶ 7-8.) During his employment Schmitt signed an Employment Agreement that included a non-competition provision. (Empl. Agrmt. ¶ 6.)

Schmitt resigned from DeLaval on October 21, 2013, and began working for Brown Dairy Equipment Co. as a Technical Training Specialist. Brown Dairy sells and services dairy equipment and is a direct competitor of DeLaval. (Olinger Decl. ¶ 3.)

DeLaval seeks a preliminary injunction enjoining Schmitt from marketing or selling any products or services competitive with any product or service offered by DeLaval to any customer (1) within the state of Michigan, or (2) contacted by Schmitt within the 12 months before he left DeLaval.

## II.

The Court held a hearing on Plaintiff's motion for preliminary injunction on January 8, 2014. At that time the parties elected not to introduce live testimony, but to proceed on the affidavits that have been filed.

In evaluating a request for a preliminary injunction, this Court considers:

> (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citing *Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc*.), 963 F.2d 855, 858 (6th Cir.1992)). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries [its] burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)).

**A. Likelihood of Success on the Merits**

    1. Enforceability of Non-Competition Agreement[1]

The parties agree that the employment contract is governed by Missouri law.  The law of non-compete agreements in Missouri seeks to balance the employer's "legitimate interest in engaging a highly trained workforce without the risk of losing customers and business secrets after an employee leaves his or her employment," and the employee's "legitimate interest in having mobility between employers to provide for their families and advance their careers."  *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 841 (Mo. 2012).  A non-compete agreement is generally enforceable if it is "demonstratively reasonable," i.e., "no more restrictive than is necessary to protect the legitimate interests of the employer."  *Id.*  "A non-compete agreement must be narrowly tailored temporally and geographically and must seek to protect legitimate employer interests beyond mere competition by a former employee."  *Id.* at 841-42.

Missouri courts "have identified two protectable interests of employers:  customer contacts and trade secrets."  *Naegele v. Biomedical Sys. Corp.*, 272 S.W.3d 385, 389 (Mo. Ct. App. 2008).  *See also Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 610 (Mo. 2006) (holding that non-compete agreements "are not enforceable to protect

---

[1]At oral argument Schmitt withdrew his argument that because he signed the employment agreement with DeLaval Direct Distribution LLC, DeLaval, Inc. does not have standing to enforce the employment agreement.

an employer from mere competition by a former employee, but only to the extent that the restrictions protect the employer's trade secrets or customer contacts."). "Accordingly, a non-compete agreement is enforceable 'only to the extent that the restrictions protect the employer's trade secrets or customer contacts.'" *Whelan*, 379 S.W.3d at 842 (quoting *Copeland*, 198 S.W.2d at 610).

> The non-compete agreement between DeLaval and Schmitt reads as follows:
>
> Unless a different time period is specified in the following paragraph, for a period of two (2) years after termination of this Agreement, the Employee agrees that he or she shall not market, promote, sell, or attempt to sell, on his or her own behalf or on behalf of any other person, company or entity, products or services which are competitive with any products or services offered or sold by Company, (1) to any customer within the state of Michigan, or (2) to any customer or prospective customer contacted by the Employee on behalf of the company within the twelve (12) months immediately proceeding [sic] termination hereof. The Employee recognizes that this restrictive covenant is justified and protects the legitimate interest of the Company particularly because of the access the Employee will have to Company's customers, employees and Confidential Information.

(Dkt. No. 8, Pl. Br. Ex. 3, Empl. Agrmt. ¶ 6.)

DeLaval has advised that, for purposes of this motion, it is not attempting to justify the non-compete agreement as necessary to protect trade secrets. (Dkt. No. 15, Pl. Reply Br. 3 n.1.) Its focus is on protection of its customer contacts.

DeLaval contends that the non-compete agreement prohibits Schmitt from offering products or services competitive with products or services offered by DeLaval to any potential customers of DeLaval in Michigan. In other words, DeLaval contends that the non-compete provision prohibits Schmitt from providing services to any dairy farms in Michigan.

4

DeLaval has not shown a likelihood of success on such a broad reading of the non-compete provision. DeLaval's reading would run afoul of Missouri non-compete law because such a broad prohibition is not necessary to protect DeLaval's customer contacts. A prohibition against offering competitive products or services to all dairy farms in Michigan would not only protect DeLaval's customer contacts, but would effectively protect DeLaval from all competition by a previous employee. Such a broad restraint is not enforceable under Missouri law. Moreover, DeLaval's reading would render subparagraph (2) meaningless. There would be no need to prohibit Schmitt from contacting prospective customers he contacted on behalf of DeLaval during his last year of employment if he is prohibited under subsection (1) from contacting any potential customers in Michigan. The only reasonable interpretation of subparagraph (1) is that it prohibits Schmitt from providing competitive products or services to any DeLaval customer within the state of Michigan.

When the non-compete agreement is understood to apply only to DeLaval customers and to prospective DeLaval customers contacted by Schmitt in his last year of employment, the Court is satisfied that the geographic and temporal scope of the non-compete provision (the limitation of the prohibition to the state of Michigan for a period of two years) is reasonable and would be enforceable under Missouri law.

    2. <u>Violation of Contract</u>

DeLaval contends that Schmitt has breached his non-compete agreement assisting Brown Dairy in servicing and selling parts to customers in Michigan both directly and by

5

training other technicians in servicing dairy equipment. In support of this assertion, DeLaval has presented evidence that that as Service Manager for DeLaval, Schmitt went on service calls to perform routine service and repairs on equipment, and would have developed a deep relationship with DeLaval's clients, learning the size of their operations, their equipment, and maintenance schedule. (Pl. Ex. 1 Russell Decl. ¶ 7.) DeLaval has also presented evidence that Schmitt has admitted that he was visiting customers in Michigan on behalf of Brown Dairy, and that Brown Dairy's goal was to acquire new customers in Michigan. (Pl. Ex. 3, Olinger Decl. ¶ 4.) Finally, DeLaval notes that DeLaval and Brown Dairy sell some of the same equipment, and that a service call will likely result in the sale of equipment or parts.

Schmitt contends that he is not in violation of the non-compete agreement because the non-compete agreement only prohibits "marketing, promoting, selling, or attempting to sell" competitive products and services, and he was not hired by Brown Dairy to a position of marketing or selling products to customers of DeLaval. (Def. Ex. A, Schmitt Aff. ¶ 12.) Schmitt contends that he is not making any unfair competitive use of customer contacts because his primary responsibility is training technicians, not contacting customers. According to Schmitt, his position with Brown Dairy is "to assist with training current and present employees on equipment trouble shooting and safety training, as well as eventually training existing Brown Dairy customers on how to utilize their equipment automation to the fullest extent." (Schmitt Aff. ¶ 13.) Schmitt asserts that he does not sell or service dairy equipment for Brown Dairy, although he does answer technical questions about equipment

6

from Brown Dairy's existing customers when the need arises. (*Id.* at ¶ 16.) At the preliminary injunction hearing, Schmitt's attorney clarified that Schmitt does in fact go into the field on an on-call basis to service Brown Dairy customers.

As noted above, Schmitt is not prohibited from competing with DeLaval, but only from engaging in conduct that affects DeLaval's customer contacts. DeLaval has produced no evidence that Schmitt has made service calls on any DeLaval customers since becoming a Brown Dairy employee, nor is there any evidence that Schmitt is likely to make a call on a purely DeLaval customer. There is no evidence that Schmitt has disclosed anything he learned about DeLaval's customer's to Brown Dairy, nor is there any evidence that he intends to do that, or that he is likely to do that given the nature of the job he was hired to do at Brown Dairy. Schmitt was not hired by Brown Dairy to solicit new business, but to service the business Brown Dairy already has. The evidence is uncontradicted that when Schmitt makes a service call, it is in response to a service request from a Brown Dairy customer. To the extent Schmitt makes service calls on Brown Dairy customers who are not DeLaval customers, DeLaval has not shown a likelihood of success on the merits of its claim that Schmitt has violated non-competition agreement.

Nevertheless, it appears that a dairy could concurrently be a customer of both DeLaval and of Brown Dairy. If that is the case, and if Schmitt had established a relationship with that dairy through his work for DeLaval, a service call from Schmitt could jeopardize DeLaval's customer contacts. Accordingly, the Court finds that DeLaval has shown a

likelihood of success on the merits of its claim that if Schmitt makes service calls on Brown Dairy customers who are also DeLaval customers Schmitt serviced or had a business relationship with during his employment at DeLaval, there would be a breach of the non-compete agreement.

     3. <u>Estoppel</u>

Schmitt contends that DeLaval is estopped from enforcing the non-compete agreement because it did not enforce it against another service technician who left DeLaval to work for Brown Dairy several years ago.

DeLaval's failure to take legal action in one instance is not a sufficient basis for precluding DeLaval from taking action in this instance. There is ample evidence in the record of DeLaval's efforts to enforce its non-competition agreements.

**B. Irreparable Injury**

DeLaval contends that will be irreparably harmed by the loss of goodwill in the absence of a preliminary injunction because Brown Dairy directly competes with DeLaval for business, and Schmitt has already begun soliciting business in the state.

Schmitt contends that DeLaval has not made a showing of irreparable harm because there is no evidence of any likelihood of an exodus of customers from DeLaval simply because a service manager went to another dealership.

The Court is satisfied that DeLaval has made a sufficient showing that if Schmitt is permitted to service DeLaval customers with whom Schmitt had a professional relationship

during his employment at DeLaval, DeLaval would suffer irreparable harm from a loss of goodwill and client contacts.

**C. Harm to Others**

Schmitt has worked in the Lansing area as a dairy service technician or service manager since 1992. He contends that an injunction prohibiting him from using his general skills and knowledge would cause significant harm to him and his family, and would not result in any actual harm to DeLaval.

The Court does not intend to prevent Schmitt from working as a technical training specialist for Brown Dairy. The only injunctive relief the Court is considering is a temporary prohibition against Schmitt's making service calls on DeLaval customers with whom Schmitt had a professional relationship during his employment at DeLaval. This narrow injunction should not cause substantial harm to either Schmitt or to Brown Dairy. The Court is satisfied that Brown Dairy can make this accommodation without a significant impact on its business.

**D. Public Interest**

The public has an interest in protecting the freedom of parties to contract and in enforcing contractual provisions, but it also has an interest in enabling people to work int heir area of expertise. The public interest would be served by a narrowly tailored preliminary injunction that would permit Schmitt's continued employment at Brown Dairy, but would still protect DeLaval's legitimate interest in customer contacts.

## III.

Upon consideration of all of the preliminary injunction factors, the Court concludes that it is appropriate to enter a narrowly tailored injunction prohibiting Schmitt from responding to service calls from DeLaval customers he serviced or had a business relationship with while he was employed by DeLaval. DeLaval's motion for preliminary injunction will accordingly be granted in part and denied in part consistent with this opinion.

An order consistent with this opinion will be entered.


Dated: January 10, 2014 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE